**FILED**

MAR 1 2 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

1  Naeem Ahmad
2  9352 Oreo Ranch Circle
   Elk Grove, CA, 95624
3  916-230-5971 (text message only due to hearing impairment)
   naeem_104@yahoo.com

4  Plaintiff in Pro Se
5  Naeem Ahmad

6  UNITED STATES DISTRICT COURT EASTERN DISCTRICT

7  OF CALIFORNIA

8  SACRAMENTO DIVISION

9

10  Naeem Ahmad                                )  Case No.: 2:12-CV-01331-MCE-CKD
                                               )
11  Plaintiff,                                 )      **AMENDED COMPLAINT**
                                               )
12  vs.                                        )  1. Violation of RESPA 12 U.S.C. § 2605 et.
                                               )     seq
13  Countrywide Home Loans Inc,.               )
                                               )  2 .Violation of Truth in Lending Act,
14  American Pacific Mortgage Corp, DBA,       )     15 U.S.C. 1601 et. seq;
                                               )
15  American Pacific Funding                   )  3. Violation of Fair Debt Collection
                                               )     Practices Act 15 U.S.C. § 1692 et seq.
16  Bank of America N.A.                        )
                                               )  4.Unfair Competition Under Business &
17  Bayview Loan Servicing LLC.                )     Professions Code #17200
                                               )
18  Mortgage Electronic Registration          )  5. Negligent Misrepresentation
                                               )
19  Systems Inc,.                              )  6. Fraud
                                               )
20  Recontrust Company N.A.                    )_ 7. Violation of Americans with Disabilities
                                               )     Act of 1990. 42 U.S.C. 12010 et
21  DOES 1- 100                                )     seq.(ADA)
                                               )
22      Defendants                             )
                                               )  **DEMAND FOR JURY TRIAL**
23                                             )
                                               )
24                                             )
                                               )
25                                             )
                                               )

Amended Complaint

1

## PARTIES

1.  Plaintiff Naeem Ahmad is a hearing disabled, minority individual, (herein "Plaintiff" or "Ahmad") and all times relevant, was a, resident of Sacramento County, Plaintiff is the owner of certain real property commonly known as 9344 Oreo Ranch Circle, Elk Grove, CA, 95624.  (Herein "Subject Property")

2.  American Pacific Mortgage Corporation DBA American Pacific Funding (herein "APF") is a Corporate entity, with its principal place of business at 3000 Lava Ridge Court, Suite 200, Roseville, Ca, 95661, APF may be the original lender of Plaintiff's loan or a stand in for an unknown lender, APF is listed on the Deed of Trust (herein "DOT") dated September 20, 2004 as the lender of Plaintiff's loan See Request for Judicial Notice (herein "RJN") Exhibit "1" The loan closed on or about September 29th, 2004 the loan was a purchase money loan. APF was and is doing business in the State of California and in the County of Sacramento. APF at all time relevant was doing business in the State of California and in the County of Sacramento.

3.  Defendant Countrywide Home loans Inc (herein "Countrywide") is a corporate entity, with its principal place of business at P.O. Box. 1140, Semi Valley, CA, 93062, Countrywide is and at all times relevant, was doing business in the State of California, and in the County of Sacramento. Countrywide, acquired servicing rights to the loan in mid to late 2005.

4.  Defendant Bank of America, (herein "B of A") with its principal place of business at 450 American Street, Semi Valley, CA, 93065 "B of A" at all times relevant was doing business in the State of California, and in the County of Sacramento. B of A in January of 2008 announced that it would purchase Countrywide and the transaction was completed in July 2008, "B of A" became the servicer of the loan in mid 2008.

5.  Defendant Bayview Loan Servicing LLC (Herein "BLS"") is a corporate entity with its principal place of business 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Fl, 33146. "BLS" through a letter dated October 26, 2012 See "RJN" Exhibit "2" to Plaintiff claiming that the servicing of Plaintiff's loan was transferred to it by "B of

A" on October 16, 2012 without being informed of this by "B of A" or having any recorded document being filed in the County recorders office to this effect.

6. Defendant **Mortgage Electronic Registration Systems Inc,. (herein "MERS")** is a Delaware Corporation, with its principal place of business at 1818 Liberty Street, Suite 300, Reston, VA, 20190. MERS is engaged in the business of holding title to the mortgages, MERS dose not have any beneficial interest in the mortgages. It dose, business in the State of California as evidenced by inclusion of its name on the Deed of Trust. MERS was not registered to do business in California and its agent for service of process resigned on March 25, 2009.

7. Defendant Recontrust Company (Hereinafter, "Recontrust") is the foreclosure arm of B of A and acts as a Trustee in issuing Notices of Default (herein "NOD") and Notice of Trustee's Sale (herein "NTS") in the event of a default and subsequently conducts the Trustee's sale of the property in the event the default is not cures. Having their principal place of business at 1800 Tapo Canyon Road, Semi Valley, CA, 93063. Recontrust at all times relevant was doing business in the State of California, and in the County of Sacramento.

8. This action pertain to a "DOT" and an alleged Note, loan and security interest originated by the original lender American Pacific Mortgage Corp DBA American Pacific Funding Loan No, 10895 ("The Loan") On December 13, 2004 "MERS' executed an Assignment of Deed of Trust (herein 'ADOT") which was recorded in the Sacramento County Recorders Office on February 22, 2005 as instrument number 20050222 transferring all rights, title and interest of Plaintiff's mortgage to Franklin Credit Management Corporation (herein "FCMC") See "RJN" Exhibit "3" shortly there after "FCMC" or "MERS" transferred the servicing of the loan to Tribeca lending Corporation (herein" TLC") without any assignment or recording to that effect in the Sacramento County Recorders Office, some time after that Countrywide took over the servicing of Plaintiff's loan.

9. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore sues these Defendants by such fictitious names, DOES 1-100 at all times relevant herein were employees and/or agents of

Defendants and each of them. Plaintiff will designate each DOE Defendant and serve them with the Amended Complaint when their true names and capacities have been ascertained. Plaintiff alleges that each of said Defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused or is responsible in some manner for the damages proximately caused hereby.

10.   Plaintiff is informed and believes that at all times relevant all of the Defendants acted in concert with the other Defendants names in this Complaint in the wrongful and improper acts/activities alleged herein and, therefore, are responsible for the damages as alleged by Plaintiff. Plaintiff is further informed and believes that at all times relevant each individual, employee and person named in this Complaint was the agent and/or employees of each of the remaining Defendants and/or Defendants employees, and acted in concert for the purpose of injuring Plaintiff as alleged herein.

11.   Plaintiff is further informed and believes that at all times mentioned herein each Defendant and individual named in this Complaint was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants. Plaintiff is informed and believes that at all times mentioned herein, that all Defendants are liable for the actions of each of the individuals mentioned herein.

12.   Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendants have pursued a common course of conduct, acted in concert with, and conspired with, each other, and have aided and abetted one another to accomplish the wrongs complained herein.

13.   On March 07, 2008 Recontrust recorded a Notice of Default (herein "NOD") See "RJN" Exhibit "4" incorporated herein by reference the NOD and a "NOTS" on April 28, 2011 See "RJN" Exhibit "5". The "NOD" states that Recontrust is acting as an agent for the beneficiary    this notice is defective because the TS No. 08-15982 which represents borrowers loan number is incorrect the correct loan

1   number of Plaintiff's loan is 10895 this is the number that should be stated as the

2   TS No. on the "NOD". The Deed of Trust in this case states at (E)

3   'MERS" is Mortgage Electronic Registration Systems, Inc, MERS is
    a separate corporation that is acting solely as a nominee for Lender and
    Lender's successors and assigns. MERS is the beneficiary under the Security

4   Instrument. MERS is organized and existing under the laws of Delaware,
    and has an address and telephone number of P.O Box 2026, Flint, MI 48501-

5   2026, tel, (888) 679-MERS

6   14.   As a result of said express conditions, and pursuant to California Commercial Code

7   § 1201 (21), 3301, and 3309, MERS has no beneficial interest or right to enforce

8   the terms of the Promissory Note, because it is not in possession of the Promissory

    Note and is not the lender.

9

10   ## JURY TRIAL DEMANDED

11   Plaintiff complains against Defendants herein and demands a trial by jury on all

12   issues.

13   ## JURISDICTION AND VENUE

14

15   15.   This court has jurisdiction pursuant to 28 U.S.C. 1331 under the following statues:

     the Truth-in-Lending Act, 15 U.S.C. 1601 et. seq.("TILA") American with

16   Disabilities Act of 1990. ("ADA") 42 U.S.C. § 12010 et seq.  In addition, this

17   court has supplemental jurisdiction over all State law claims alleged herein

18   pursuant to 28 U.S.C. §1367.

19   16.   Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Plaintiff

20   resides in this district, Defendants do business in this district, the Subject Property

21   is in this district, and all events in question took place in this district.

22   ## FACTS COMMON TO ALL CAUSES OF ACTION

23

24   17.   Plaintiff obtained a purchase money loan, LOAN No. 10895 on or about

     September 29th, 2004 from APF

25

Amended Complaint

5

18. Plaintiff is informed and believes that the wrongful acts of Defendants include violations of Federal and State law before the initiation of the Loan as well as during the servicing period of the LOAN:

    a.   Prior to the funding of the LOAN, APF represented to Plaintiff that very favorable  loan, loan terms and interest rates were available to him;

    b.  As a result, APF and others convinced Plaintiff to obtain a loan from APF to finance the purchase of the Subject Property.

    c.  Plaintiff is further informed and believes that APF and other Defendants knew or intended that Plaintiff receive a Predatory loan, and that the worse loan produced a higher commission for them because it was at a higher interest rate and subject to higher fees.

    d.  Broker assured Plaintiff that there would be no penalties for refinancing the LOAN;

    e.  The LOAN had a negative amortization feature, whereby the balance Plaintiff owed on the loan would increase over time.

    f.  LOAN payments were insufficient to pay both principal and interest on the loan.

    g.  Plaintiff is further informed and believes that APF and others, knew or should have known that in the event of Plaintiff's inability to perform on the LOAN, prepayment penalties, commissions and other foreseeable charges to Plaintiff would constitute an additional payment stream to the benefit of Defendants.

    h.  Defendants have force place insurance on the subject property, when Plaintiff had insurance on the property, defendants have charged late fees even though the payments were not late.

19. Although APF, and others made certain representations regarding the LOAN, in actuality, the LOAN was not as represented because among other things:

a.   It was at a higher interest rate than what was represented

b.   The payments increased over time and the loan resulted in negative amortization, the loan had high prepayment penalties.

c.   Plaintiff was accordingly put into a mortgage all without Plaintiff's informed consent and through fraudulent inducement by misrepresentation of loan terms.

20.   Plaintiff is informed and believes that Defendants failed to provide Plaintiff with the proper disclosures required under Federal and State law:

a.   Defendants did not provide to Plaintiff accurate disclosures of the costs of financing, the Annual Percentage, Rate ("APR"), the payment obligations, or the type of loan at the time of the transaction;

b.   No Good Faith Estimates were provided;

c.   Defendants charged excessive amounts to Plaintiff in conjunction with the loan origination including but not limited to:

d.   Numerous disclosed fees and charges purporting to be reasonable and to reflect the actual costs and values of the same, but actually constituting profit lines to the Defendants;

h.   Other unknown and undisclosed fees, commissions, premiums and compensation.

21.   Plaintiff is informed and believes that Defendants APF, Countrywide "B of A", "BLS" and others failed to fulfill their lawful obligations regarding servicing of the LOAN,

22.   Furthermore, Plaintiff is informed and believes that APF, Countrywide, "B of A" and Recontrust and/or their agents breached their duties of care to Plaintiff by, among other things, the following:

a.  Structuring the LOAN with payments that Plaintiff could not afford;

b.  Falsifying loan applications (particularly with regard to Plaintiff's income level, marital status);

c.  Defendant APF misrepresented the fact that Plaintiff is a married individual, the Deed of Trust states "Naeem Ahmad, an unmarried man" "DOT" (B) Plaintiff objected to this misrepresentation at loan signing and was given the attitude "take it or leave it" explanation given was it is a standard practice in the industry when one parties (husband or wife) low credit score would prevent the other from qualifying for the loan, 'APF' and other Defendants thus may have violated California homestead and community property laws federal one spouse signature laws these may render the lien on the property invalid and unenforceable.

23.  At the time the LOAN was executed, predatory lending behavior evidenced by Defendants includes, but is not limited to, the following:

a.  Creating the LOAN with a high APR:

b.  Charging improper broker fees:

c.  Charging excessive prepayment penalties: and

d.  Rushing the loan closing without explaining any of the loan documents and what they entailed.

24.  Furthermore, Plaintiff is informed and believes that APF, Countrywide, "B of A" and other defendants and/or their agents willfully deceived Plaintiff by, among other things, the following:

a.  Defendants created a Note with so many different addenda, riders and disclosures that the contract was incomprehensible to a standard consumer; Workings of the loan and various LOAN documents were not explained to Plaintiff, and the loan signing was rushed.

---

     b.    Defendants provided loan payment examples as purported disclosures of payment obligations that were not consistent with stated loan payments, and required complicated extrapolation to calculate payments for the actual loan.

25.    Plaintiff is informed and believes that the loan securitization process has created a situation where no single entity has complete ownership of the LOAN, or even sufficient authority to negotiate a workout or modification to the LOAN. As a result the originating Lender, unknown investors and one or more servicer all entered into servicing agreements with an entity that cannot speak for the LOAN. Defendants represented that they had the right and authority to foreclose on the Subject Property. Plaintiff is informed and believes that this representation was false because all of Defendants rights regarding the LOAN are derivative of rights held by unknown investors whose rights themselves, dependant on the rights of the Originating Lender who perpetrated the initiation of the LOAN. Plaintiff is informed and believes that APF, Countrywide, "B of A", "MERS", "BLS", Recontrust and others falsely, wrongfully, and negligently or intentionally represented to Plaintiff and to others that it had authority to service, collect, negotiate, work-out, and foreclose the LOAN notwithstanding the deficiencies with the LOAN, defective.

26.    Substitution of Trustee (herein "SOT") See "RJN" Exhibit "6" which is dated after the "NOD and "NOTS" were issued rendering the "NOD" and "NOTS" invalid because the trustee lacked power and authority to issue the foreclosure notices because it had not yet been substituted as the new trustee.

27.    On May 3, 2011 "MERS" assigned Plaintiff's "DOT" via a recorded assignment filed in the Sacramento County Recorders Office as Instrument No. 20110503 See "RJN" Exhibit "7", the "Corporate Assignment Of The Deed of Trust" transferred all beneficial interest to 'THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE

HOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-SD2.

    a.  This is the second time "MERS" has executed an assignment transferring Plaintiff's "DOT", first from "APF" to "FCMC" then the second time from "FCMC" to Bank of New York Mellon, each time "MERS" dose it for "FOR VALUE RECEIVED" it is well established that "MERS" has no beneficial interest in "DOT's" or mortgages yet they receive value every time they assign the "DOT" to a new entity at will without (in this case) the consent of "FCMC" in the second assignment. "MERS" gets paid twice for transferring the same mortgage twice, this is truly a case of "he who giveth can taketh away at will" (even though they were paid) specially when 'FCMC' did not appoint "MERS" to act as a nominee, successor, assigns or a beneficiary on their behalf.

    b.  Plaintiff is informed and believes that the LOAN and related contracts contain conflicting terms and interest rates that are not reasonably comprehensible by a consumer, possibly including but not limited to the Note, Addenda, Trust Deed, Rider(s), TILA, Estimated Settlement Statement(s), Final Settlement Statement(s), Escrow Instruction(s), all containing complicated and in many cases contradictory terms.

    c.  Plaintiff relied on the representations of APF and other Defendants as alleged herein because Plaintiff reasonably believed that Defendants are licensed banks, and mortgage companies, and are fiduciaries of Plaintiff, owing Plaintiff duties of utmost care, loyalty, professionalism and to conduct all real estate transactions herein without violating any of the fiduciary duties owed to Plaintiff.

    d.  APF, Countrywide and other Defendants breached their fiduciary obligations owed to Plaintiff, were negligent, made negligent

misrepresentations, intentional misrepresentations, breached their contract with Plaintiff, were professionally negligent and caused Plaintiff damages.

e.   Plaintiff is informed and believes that Countrywide, "B of A" , "BLS" and other Defendants purchased or otherwise acquired unknown rights and/or responsibilities relating to Plaintiffs LOAN from APF or the actual lender date unknown to Plaintiff. All such rights and responsibilities depend on the rights of the actual lender, to be determined in discovery.

f.   The terms of the LOAN are meaningless and unenforceable if the rights of the original lender are unenforceable.

g.   As a proximate result of Defendants' conduct as herein alleged, Plaintiff sustained damages, including monetary loss, emotional stress, emotional distress, loss of credit, loss of opportunities, court fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, standing in the community, mental pain and anguish, all to Plaintiff's damage in an amount to be established at trial.

h.   Plaintiff's damages included but are not limited to excessive fees, charges, penalties and interest.

i.   Each Defendant herein is responsible for the acts of other Defendants and their predecessors based on the doctrine of *respondeat superior*. Further, each Defendant herein is responsible for the acts of other Defendants because each Defendant negligently supervised the other Defendants and is therefore directly responsible for the acts of the other Defendants.

j.      All Defendants are agents, employees and other fiduciaries of each other as set forth within. Each of the wrongful acts by Defendants against Plaintiff set forth within, were done in the scope of employment. Defendants were acting as agents and employees and in the transaction of the business of the employment or agency when performing their wrongful actions. Defendants are therefore directly, jointly, and severally liable to Plaintiff for their actions, the employees of said parties, and all other Defendants as set forth herein.

k.      The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages, as well as fees and costs.

## FIRST CAUSE OF ACTION

### VIOLATION OF RESPA 12 U.S.C. § 2605

28.   Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs, as though set forth in full herein.

a.      The Loan transaction between Plaintiff and Defendants is a mortgage loan covered by RESPA.

b.      A violation of RESPA is also made unlawful under California State law by Financial Code § 50505, which states: "[a]ny person who violates any provision of [RESPA] or any regulation promulgated there under, violates this division [California Residential Mortgage Lending Act]."

c.    Plaintiff is not certain at this time exactly, which of Defendants was actually the servicer of the Loan at any given time. However, due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiff or properly record assignments regarding the roles and, identities, of the various entities that keep popping up without assignment that were purportedly handling his Loan at any given time, these allegations are made as to all Defendants.

d.    Defendant violated RESPA at the time of the closing of the Loan subject to this First Amended Complaint by failing to correctly and accurately comply with the disclosure requirements provided therein.

29.    Defendants B of A and Recontrust violated RESPA, 12 U.S.C. § 2605(e)(2), by failing to provide a written explanation or response to Plaintiff's Qualified Written Request (herein "QWR") dated May 13, 2011, sent by certified mail return receipt See "RJN" Exhibit "8". "B of A" acknowledged receipt of Plaintiff's QWR via their letter dated;

a.    June 2, 2011 See "RJN" Exhibit "9" the letter states in part that they will respond to the request after their investigation is complete, however to the best of Plaintiff's knowledge "B of A" never responded to Plaintiff's QWR.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendants have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

31.    As a result of Defendants' failure to comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, and costs and reasonable expenses. Defendants Countrywide, "B of A" failed to adequately respond to Plaintiff's requests for information regarding the LOAN, within the time specified by RESPA, as a proximate result of the negligent conduct of Defendants

and their failures as herein alleged, Plaintiff sustained damages, including monetary loss, emotional distress, loss of income, loss of credit, loss of opportunities, and other damages to be determined at trial. As a proximate result of Defendant' breach of duty and all other actions alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental pain and anguish, all to Plaintiff's damage in an amount to be established at trial. Plaintiff seeks to recover all possible damages Plaintiff is entitled to recover pursuant to RESPA, including statutory and punitive damages.

## SECOND CAUSE OF ACTION

### VIOLATION OF TRUTH-IN-LENDING ACT 15 U.S.C. §1601 *et seq.*

#### (Against all Defendants)

32. Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs, as though set forth in full herein.

33. All Defendants have fraudulently concealed facts upon which the existence of Plaintiff's claim for Negligent Misrepresentation is based, and as such, the statute of limitations is equitably tolled as to this Cause of Action.

34. Plaintiff is informed and believes that Defendants violated TILA at the time of origination because, among other things:

    a.    The interest rate on the Note See "RJN" Exhibit "10" and the Truth-in-Lending disclosure statement See "RJN" Exhibit "11" were deceptively presented not consistent and had no relation to each other, furthermore the rate was only good for the first 30 day of the loan, immediately thereafter the rate set to a new higher undisclosed interest rate, which was concealed from Plaintiff.

    b.    The APR was not correctly calculated.

    c.    The required payments to the lender were not fully disclosed.

35.   Plaintiff is informed and believes that Defendants' violation of the provisions of law rendered the credit transaction null and void, invalidates Defendants' claimed interest in the Subject property, and entitles Plaintiff to damages as proven at trial.


# THIRD CAUSE OF ACTION

**Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq,.**

**(Against all Defendants)**

36.   Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs, as though set forth in full herein.

37.   Plaintiff is informed and believes that the wrongful acts alleged above are violations of the Federal Fair Debt Collection Practices Act which also violate the **Rosenthal Fair Debt Collection Practice Act, California Civil Code § 1788 et seq.**

38.   Plaintiff is informed and believes that these acts violated the Rosenthal Act and improper Debt Collection Practices

39.   Defendants have failed to validate the debt.

  i.   Defendants have misstated the loan number of the "NOD" and "NOTS", Plaintiff has repeatedly informed Defendants that the loan number they are foreclosing upon do not belong to Plaintiff and defendants have failed to cure the defects and continued to foreclosure on Plaintiff's property.

  ii.   The Debt is not owed to Defendants by Plaintiff as such Plaintiff is unwilling to discuss or pay the debt to Defendants, until such time Defendants cure the defects on the NOD and NOTS and offer proper validation of the debt as belonging to them with proper chain of transfers and assignment without breaks as the case in here.

iii. Plaintiff sent a debt dispute/validation, and cease and desist letter to "BLS" on December 6, 2012 via certified mail return receipt See "RJN" Exhibit "12" (similar letter and faxes were sent to Countrywide, "B of A" and Recontrust in the past without any response from them) "BLS" responded on January 3, 2013 in an attempt to validate the debt See "RJN" Exhibit "13" the letter states a completely different loan number not found any where on any other documents of Plaintiff's loan i.e. "DOT", "NOD", "NOTS" Note or monthly account statements. The letter makes references to "APF" as the original creditor on the account and implies that "BLS" is servicing the loan on "APF's" behalf when in fact "APF" assigned its interest in the loan to "FCMC" and that "APF" has been out of the picture since December 13, 2004.

iv. In an earlier debt validation letter from "BLS" dated October 30, 2012 See "RJN" Exhibit "14" the letter states in paragraph one that "BLS" is servicing the loan on behalf of "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE" [FOR] "(CWABS 2006-SD2) the owner of the loan".

v. Paragraph two of "RJN" Exhibit "14" states that "We are attempting to collect a debt" thus admitting to the fact that "BLS" is a debt collector additionally Countrywide, B of A and Recontrust all admit to being debt collectors attempting to collect a debt in all the foreclosure notices.

vi. Under Title 15 U.S.C. §1692 Once the consumer informs the debt collector in writing and puts the validity of the debt in dispute.

vii. debt collector, must cease all collection activity, Defendants have ignored the provision of the law and continued with collection and foreclosure activities against Plaintiff. Plaintiff via this Amended Complaint is disputing the validity of the debt yet again and giving formal notice to Defendants to cease all collection and foreclosure activities against Plaintiff and his property, until such time they can

provide proof the debt is owed to them and they provided proof they funded the loan or are the actual lenders of the LOAN.

viii. "MERS" is a Non-Authorized Agent and cannot legally assign the Promissory Note, Substitute any Trustees, making any foreclosure by other than the original Lender wrongful.

ix. For this reason MERS right to substitute a new Trustee or enforce the Note must fail. They are simply acting as debt collectors who don't have the power to do so.

## FOURTH CAUSE OF ACTION

### Unfair Competition Under Business & Professions Code #17200

### (Against all Defendants)

40.   Plaintiff incorporates by this reference each and every allegation set forth in all forgoing paragraphs, as though set forth in full herein.

41.   Defendants have engaged in business practices that are unlawful, unfair and fraudulent.

42.   Defendants business practices are unlawful as the activities alleged herein, i.e. those described, in the foregoing causes of action, are forbidden by law.

43.   Defendants' business practices are unfair because they offend public policy, are immoral, unethical, oppressive, and substantially injurious to consumers. Defendants, with no regard to Plaintiff's financial condition marital status brokered, executed and serviced the LOAN. Simultaneously, Plaintiff was unaware that LOAN would become unaffordable to Plaintiff given the oral representations to the contrary made by Defendants, as well as the volume, complexity and incomprehensible nature of unexplained, LOAN documents provided by Defendants to Plaintiff.

44.   Further, Defendants' business practices can be classified as unfair on the additional ground that the damage accruing to Plaintiff as a result of the defective LOAN significantly outweighs the reasons, justifications and motives of Defendants in brokering, executing, and servicing the LOAN. Due to the LOAN, Plaintiff is burdened with a higher interest rate, a mortgage that did not pay off the debts (as Defendants promised it would) it rather increased the debt through negative amortization from the initial loan amount of $ 299,150.00 to over

$ 376,843.70 See "NOTS" para 4. Defendants and each of them have unfairly and unlawfully received commissions, fees and payments from Plaintiff.

45.   Finally, Defendants business practices were fraudulent because their activities were deceptive to the public. Among other things, Defendants represented to Plaintiff that very favorable loans, loan terms and interest rates were available, when in fact, they were not.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

46.   Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs, as though set forth in full herein.

### Count 1

### (Against Defendants APF)

47.    APF made material misrepresentations to Plaintiff which include, but are not limited to, the following.

a.    Plaintiff was promised that his monthly mortgage payments would be much lower then they actually were;

b.    APF assured Plaintiff that he would be able to refinance the LOAN within three (3) months, when in fact this was not an option for Plaintiff due to prohibitively high, prepayment penalties.

c.   APF assured Plaintiff that there would be no penalties for refinancing the LOAN and

**Count 2**

**(Against Defendants APF and Countrywide and DOES)**

48.   APF aided, abetted and was in a contractual relationship with Countrywide and other investors as to downstream transactions regarding transfer and servicing of the LOAN.

**Count 3**

**(Against Defendants APF, Countrywide and DOES)**

49.   After the LOAN, which was deficient at the origination stage, was transferred to Countrywide, Recontrust, initiated foreclosure proceedings against Plaintiff, when Plaintiff's loan went into alleged default, made a misrepresentation of material fact by representing to Plaintiff that it had the authority and right to foreclose on the LOAN,

50.   Plaintiff received a Defective, Notice of Default, "NOD" and defective, Notice of Trustee's Sale, 'NOTS" with loan numbers that did not belong to Plaintiff's loan, Plaintiff through a letter/fax informed Defendants of the defect which defendants failed to cure and ignored and continued the foreclosure proceeding against Plaintiff, the trustee that started the foreclosure proceeding against Plaintiff Recontrust Company was acting without powers and the substitution that substituted, Recontrust for the previous trustee, was defective. The Notice of Sale was recorded with the Sacramento County Recorder's, By Recontrust, by doing so, they falsely and negligently represent to Plaintiff that they had the authority to foreclose on the LOAN, with defective/wrong LOAN numbers and defective substitution.

51.   Plaintiff is informed and believes that the representations of "B of A", and Recontrust, were, false since they knew or should have known that they did not

have the authority, right or standing to foreclose on the LOAN that was deficient at the origination stage.

52. Defendants' misrepresentations made herein were intentional, and said misrepresentations were negligent. When Defendants made the representations alleged herein, they had no reasonable ground for believing them to be true.

53. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

54. Plaintiff, unaware of the complexities and/or defects involved in the subsequent transactions between Defendants that occurred after Plaintiff entered into the LOAN, justifiably relied on all the defendants representations that they had the authority to foreclose on the LOAN.

55. As a proximate result of the negligent misrepresentations of Defendants as herein alleged, Plaintiff sustained damages, including monetary loss, expenses, emotional distress, loss of credit, loss of opportunities, fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial.

## SIXTH CAUSE OF ACTION

### Fraud

56. Plaintiff incorporates by this reference each and every allegation contained in all foregoing paragraphs. As though set forth in full herein.

57. Plaintiff is informed and believes that APF, and other Defendants made various false misrepresentations to Plaintiff regarding the LOAN and induced Plaintiff to enter into the LOAN. Countrywide "B of A", "BLS" and others assumed the

1   responsibilities and duties owed to Plaintiff by purchasing/assuming the LOAN.

2   APF, Countrywide, "B of A", "BLS" and other Defendants are responsible for

3   the false misrepresentations made by "APF", their predecessors and other

    Defendants herein. Defendants and each of them are successors in interest to

4   "APF", Countrywide, "B of A", "BLS" Recontrust and DOES to each other, and

5   other responsible parties, All Defendants and each of them acted in concert with

6   respect to defrauding Plaintiff.

7                                    **Count 1**

8
                    **(Against Defendant APF, Countrywide and B of A)**
9

10  58.   Plaintiff   is   informed   and   believes   that   Defendants   made   various

          misrepresentations of material fact with respect to the LOAN, are subject to
11
          assignee liability, and induced Plaintiff to rely on said misrepresentations. These
12
          misrepresentations were representations of material fact with respect to the
13        mortgages, the actual interest rates and other terms of the mortgages. The

14        representations made to Plaintiff by Defendants were in fact false.

15  59.   APF, Countrywide and its agents acting in their capacity and with the authority

16        vested in them as agents or employees of each other, during the origination phase

17        of the loans transaction, made statements to Plaintiff with knowledge and

          ratification by APF and Countrywide, which may be imputed to them.
18

19  60.   Plaintiff is informed and believes that all Defendants herein intended to induce

20        Plaintiff's reliance on the facts misrepresented, and variously misinformed

          Plaintiff regarding the terms of the LOAN as alleged herein so that Plaintiff
21
          would enter into the financing agreements and so that they could cause Plaintiff
22        to accept the LOAN and to continue on with the fraudulent LOAN.

23
    61.   Defendants knew or should have known that the representation made in their
24        correspondences were in violation of RESPA. Defendants knew or should have
25        known that the representations made by Defendants in an attempt to convince
          Plaintiff to take out the LOAN were false.

62.   In justifiable reliance on Defendants' and each of their various misrepresentations, Plaintiff did take out a LOAN on the Subject Property, Plaintiff is burdened with a higher interest rate, Plaintiff is burdened with a mortgage that will increase the debt through the negative amortization feature of the loan, Plaintiff is now burdened with the unlawful LOAN and Plaintiff has suffered damages as a result.

63.   At the time Defendants and their predecessors herein made the promises and representations to Plaintiff, Defendants and their predecessors herein had no intention of performing the promises.

64.   The promises were made by Defendants and their predecessors with the intent to induce Plaintiff to take out the LOAN and take other actions so that Defendants and each of them could make their respective profits, commissions, yield spread premiums, sales quotas and gain other beneficial financial interests including but not limited to prepayment penalties, late payment penalties, surcharges and other fees.

65.   Plaintiff, at the time these promises were made and at the time Plaintiff took the actions herein alleged, was ignorant of Defendants' secret intentions not to perform, ignorant of Defendants' false representations stated herein, and Plaintiff could not, in the exercise of reasonable diligence, have discovered, Defendants' secret intentions and false representations. The actual terms of the loan were concealed/misrepresented in such a clever manner that even the exercise of due diligence, would not have revealed the actual terms of the loan, Plaintiff being an unsophisticated first time home buyer would, never have discovered the deceit perpetrated by defendants. In reliance on the promises of Defendants their predecessors, and successors, Plaintiff signed various unexplained, documents, ultimately ending up with the LOAN.

66.   Defendants and their predecessors are reputable, lending institutions, doing business in California, and Plaintiff justifiably relied on their representations.

67.     Plaintiff, at the time these representations were made by Defendants and their predecessors, and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of the misrepresentations and believed them to be true. In reliance on these representations, Plaintiff

68.     was induced to take out the LOAN, be burdened with fraudulent LOAN, and other actions, had Plaintiff known the actual, facts, Plaintiff would not have taken such action.

69.     As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiff sustained damages, including monetary loss, medical expenses, emotional distress, loss of income, loss of credit, loss of opportunities, fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotion distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial.

70.     The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages, as well as fees and costs.

## Count 2

### (Against Defendants APF, Countrywide and DOES)

71.     Defendants made various representations of material fact with respect to the LOAN, and induced Plaintiff to rely on said misrepresentations.

72.     Defendants represented among other things that:

73. The LOAN was validly entered into and properly initiated free of unlawful or fraudulent inducements;

74. Defendants have proper authority to foreclose on the LOAN.

75. The representations made to Plaintiff by Defendants were in fact false.

76. Plaintiff is informed and believes that Defendants intended to induce Plaintiff's reliance on the facts misrepresented, and variously misinformed Plaintiff regarding the terms and validity of the LOAN as alleged herein.

77. Defendants knew or should have known that they were in violation of State and Federal law.

78. Plaintiff, when confronted with the threat of foreclosure and at the time Plaintiff took the actions herein alleged, was ignorant of Defendants' inability to lawfully foreclose and its false representations stated herein. Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendants' secret intentions and false representations. In reliance, on the statements, of Defendants, and their predecessors.

79. At the time Defendants and their predecessors herein made  statements and representations to Plaintiff, Defendants and their predecessors could not lawfully perform; namely, Defendants lacked the legal authority to foreclose on the LOAN.

80. The promises were made by Defendants and their predecessors with the intent to make their respective profits, commissions, sales quotas and gain other beneficial financial interest including but not limited to prepayment penalties, late payment penalties, surcharges and other fees.

81. Defendants are Federal and State recognized financial companies doing business in California, and Plaintiff justifiably relied on their representations.

82.   Plaintiff, at the time these representations were made by Defendants took the actions herein alleged, was ignorant of the falsity of the misrepresentations and believed them to be true

83.   As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiff sustained damages, including monetary loss, emotional distress, loss of income, loss of credit, loss of opportunities, fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions a alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, mental pain and anguish, all to Plaintiff's damage in an amount to be established at trial.

84.   The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages, as well as fees and costs.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF AMERICAN WITH DISABILITIES ACT OF 1990

### 42 U.S.C. § 12101. et seq.

85.   Plaintiff re-pleads and incorporates by reference, as though fully set forth again herein, all the preceding paragraphs in this Complaint.

86.   Plaintiff is a hearing disabled person, "a person with a disability: within the meaning of ADA, all the named defendants have denied and prevented Plaintiff from equal enjoyment of goods and services offered to the general public and have prevented Plaintiff and refused to provide Plaintiff with effective means of communications with defendants.

87.     Plaintiff's hearing disability prevents him from engaging in telephonic conversations

88.     All the loan documents that were mailed to Plaintiff after the loan closing, all monthly loan statements and correspondence mailed since September 29th, 2004 until the filing of this complaint only list phone number to call in case Plaintiff needed to communicate with the defendants with questions regarding his loan.

89.     Defendants failure to list TTY, TTD, email addresses or other effective means of communications for hearing disabled customers, is a failure to accommodate effective communication, eligibility criteria that tend to screen out or segregate individuals with disabilities or limit their full and equal enjoyment of the place of public accommodation.

90.     On March 12, 2012 Plaintiff wrote a letter to defendant "B of A" See "RJN" Exhibit "15" The letter is self explanatory as it is a request to accommodate Plaintiff with alternate means of communications, defendants never responded to Plaintiff in this regard and did not provide Plaintiff with email, text or other modes of effective communication to accommodate plaintiff's hearing disability.

91.     Defendants engaged in a barrage of endless phone calls to Plaintiff's, brother Nadeem Ahmad before and after the letter was sent and continue to do so still, despite being told to communicate with Plaintiff directly in a manner that he may understand because he is hearing disabled. On many occasion up to three call were placed in a single day.

92.     Defendants by their denial of reasonable accommodation and effective means of communication have prevented Plaintiff from seeking alternatives to foreclosure and loan modification.

93.     Pursuant to law, in 1990 the United States Congress made findings per 42 *U.S.C.* § 12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect 43 million Americans with one or more physical or mental disabilities: historically society has tended to isolate and segregate

individuals with disabilities: such form of discrimination against individuals with disabilities continue to be serious and pervasive social problem, the nation's proper goals regarding individual with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals, the continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justifiable famous.

94.    As part of the *American with Disabilities Act of 1990,* Public Law 101-336 (herein after the "ADA"). Congress passed 'Title III – Public Accommodations and Services Operated by Private Entities" (42 *U.S.C.* § 12181, et seq.).

95.    Pursuant to 42 *U.S.C.* § 12182,

    i.    "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

96.    Among the general prohibition against discrimination were included in 42 *U.S.C.* § 12182(b)(1)(A)(i):

    1.    **Denial of Participation.**   It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individuals or class, directly, or through contractual, licensing, or other arrangements, to a denial of opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

97. The acts of Defendants set forth herein were a violation of Plaintiff's rights under **"ADA"**, Public Law 101-336, and the regulations promulgated thereunder, 28 *CFR* Part 36 et seq.

98. Pursuant to the *Americans With Disabilities Act of 1990*, §308 (42 *U.S.C.* §12188 et seq.), Plaintiff is entitled to the remedies and procedures set forth in the *Civil Rights Act of 1964* §204(a), (42 *USC* §2000a-3(a)), as Plaintiff is being subjected to discrimination on the basis of disability in violation of this title and /or Plaintiff has reasonable grounds for believing that he is about to be subjected to discrimination in violation *Americans With Disabilities Act of 1990* §302.

99. Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the *Civil Rights Act of 1964* (42 *U.S.C.* §2000a-3(a), and pursuant to Federal regulations adopted to implement the *Americans With Disabilities Act of 1990*, including, but not limited to, an order granting injunctive relief, "including litigation expenses and costs," are further specifically provided for by §505 of Title III.

100. A violation of ADA is a violation of the California Unruh Civil Rights Act Cal Civil Code. § 51 Plaintiff is thus entitled to recover statutory damages for each and every violation of the Act.

101. If TTY/TDD numbers are not listed on written correspondence sent to Plaintiff and the document only lists a phone number and directs borrowers to call the number in case they have questions about their loan account is already a bar to hearing disabled person as there are no instruction in the document about how a hearing disabled person may communicate with the bank, it is not up to the disabled borrower to guess that the numbers provided may also be used to communicate via TTY/TDD devices even if they did it will not result in effective communications because the phone call are rarely answered and borrowers are asked to leave a message. If the hearing disable borrower were to call he may not understand or hear the instructions about how to leave a message if say he gets past this hurdle and dose leave a his name and number the call back from the Bank will most certainly be a voice call which will be a denial of accommodation of a hearing disabled person the document direct a borrower as to how they may

communicate with the Bank it should also provide instruction to disabled borrower as to how they may communicate with the Bank effectively the fact that it dose not is a violation of ADA and denial of reasonable accommodation to a disabled person.

102.   Regular phone numbers which may accept TTY/TDD call are not means off effective communications See consent decree entered into by U.S Department of Justice v. Wells Fargo Bank this document is available on DOJ's web site.

103.   Plaintiff was not able to find any and the court in its prior ruling in the "FR" did not mention any case Laws dealing specifically with the absence of TTY/TTD numbers on written correspondences, Plaintiff believes such case has not been presented to or decided by the courts, Plaintiff will write to DOJ for a ruling and clarification on the subject and Judicially Notice DOJ's response to the Court for consideration on future rulings on Plaintiff's case.

WHEREFORE, plaintiff prays for damages as hereinafter stated.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

1)   IF THIS COURT determines that Defendants violated RESPA and TILA at the inception and during servicing Plaintiff requests that this Court find that the alleged Note and Lien and defendants standing to foreclose are in dispute and order as follows:

2)   For immediate cease and desist order enjoining all Defendants, and each of them, their agents, servants, heirs, corporate affiliates, subsidiaries, employees, and all persons or entities acting under, in concert with, or on their behalf in any capacity from selling or conveying or attempting to sell or convey any interest whatsoever that Plaintiff may have in the real property commonly known as 9344 Oreo Ranch Circle, Elk Grove, CA, 95624 or relating to the LOAN.

3) That Defendants provide an accounting of all amounts charged to Plaintiff or paid by Plaintiff relating to the LOAN, complete response to RESPA inquiry.

A.  For actual damages according to proof;

B.  For compensatory damages as permitted by law;

C.  For consequential damages as permitted by law;

D.  For statutory damages as permitted by law;

E.  For punitive damages as permitted by law,

F.  Leave to amend.

G.  Fees and costs.

H.  Grant all other relief this court deems just and proper.


Dated this 12th, day of March, 2013.

**Naeem Ahmad**

**Plaintiff in Pro Se**

Amended Complaint

30